

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Edwin Johnson, Jr., | : | Case No. 1:09CV2221 |
| | : | |
| Petitioner | : | Judge Lesley Wells |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Keith Smith, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Respondent | : | |

In this pro se action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the

constitutionality of his January 31, 2007 convictions pursuant to a jury trial on one count of

aggravated murder, upon which he is serving a sentence of fifteen years to life imprisonment, and

one count of tampering with evidence and one count of gross abuse of a corpse, upon which he was

sentenced to two concurrent terms of five years in prison, with those sentences to be served

consecutive to the sentence on the aggravated murder conviction.[1]

Petitioner appealed his convictions to the Ohio Eighth District Court of Appeals alleging

six assignments of error:

> I.   The improper admission of "other acts" evidence denied the
> appellant a fair trial in violation of the Fourteenth amendment
> of the federal Constitution and a new trial must be ordered.

---

[1] The petitioner had originally also been charged with one count of kidnapping, but the jury acquitted him on that count.

1

II.   Prosecutorial misconduct denied the appellant a fair trial in violation of the Fourteenth Amendment of the federal constitution.

III.   It is a violation of the Fifth, Sixth and Fourteenth Amendments of the federal constitution to elicit during the State's case in chief the appellant's failure to deny killing the victim as substantive evidence of guilt.

IV.   The cumulative errors deprived the appellant of Due Process in violation of the Fourteenth Amendment of the federal Constitution.

V.   The evidence is insufficient to convict the appellant in violation of the federal Constitution.

VI.   The appellant's convictions are against the weight of the evidence.

On April 21, 2008 the appellate court affirmed the convictions.

In its opinion, the court summarized the facts in petitioner's case as follows:

Friends of Brandy Wittenberg last saw her or last heard from her on September 25, 2005. The next day, workers at Kilroy Steel observed a fire on an adjacent vacant property. The police and the fire departments discovered that the burning bag contained a badly burned body, which they later identified as Brandy Wittenberg, the reputed wife of Edwin Johnson, Jr., the mother of his two girls.

The coroner determined that Brandy died from cervical compression to the neck. The State concluded someone manually strangled her. Also, the State believed someone stuffed her body into a black garbage bag with a red drawstring, and someone set the bag on fire. That someone, the State surmised, was Edwin Johnson, Jr. The State's theory of the case was that he choked her to death. The State charged him with aggravated murder, kidnapping, tampering with evidence, and gross abuse of a corpse.

The subject of this appeal is Johnson's second jury trial. The first trial resulted in a hung jury. In the second trial, Johnson represented himself with the assistance of a court-appointed lawyer. The second jury found him guilty of all charges. The trial court sentenced

2

Johnson accordingly.

At trial, the State established that Brandy believed she and Johnson were legally married. Two weeks prior to her death, she told her friend, Sharon Marbury, a State witness, that she wanted a divorce from Johnson because of his affair with Juanita Jones, his co-defendant and co-worker. Regardless, the evidence established that Johnson remained legally married to another woman, Gloria Hall Johnson.

Sharon Marbury repeated a conversation she had with Brandy; she stated that Brandy told her that the next time Johnson choked her, he would kill her. Marbury confirmed that Johnson had choked Brandy on many prior occasions.

Marbury observed during that conversation that Brandy had red and deep purple bruises on her neck.

Several witnesses testified about the events of September 25, 2005; the State believed that this was the date Brandy was murdered. Her longtime friend, Cheryl Kallutz, had on occasions observed bruises on Brandy's neck. Kallutz recalled an occasion, after the police had responded to a domestic dispute at the couples's house, Brandy indicated to Kallutz that while Johnson was beating her, he placed his knees on her chest and choked her.

Kallutz stated that on September 25, 2005, Brandy called her and asked her to pick her up at the house. Brandy did not want to be at the house when Johnson arrived to visit with their two girls. This call came at 3:30 p.m. that day. Kallutz told Brandy she would be there in ten minutes. When she arrived, she saw the older daughter playing in the yard with the front door opened. Kallutz thought this unusual. In the past, Brandy would have been sitting on the porch waiting for her to arrive.

Kallutz testified that she asked the child where her mother was and the child told her that Brandy was "upstairs laying down with daddy." Kallutz knocked for about two minutes and Edwin Johnson, Jr. appeared at the door. He blocked the door as he stood with his arms spread across the doorway. Kallutz stated she could not get past him.

Johnson told Kallutz that he and Brandy were discussing family

3

matters.  He indicated Brandy would call her later.  Kallutz described Johnson as sweaty and out of breath.

A neighbor, Teresa Rohde, testified about that day as well.  She stated that the couple fought constantly.  She explained that Johnson choked Brandy a week before that date and the police had ordered Johnson out of the house.

Rohde stated that on Sunday, September 25, 2005, at approximately 11:00 a.m., Brandy stopped by to borrow the newspaper.  Rohde related that sometime between noon and 4:00 p.m. she heard a disturbance coming from the couple's home.  Rohde testified as follows about the ensuing events:

> "***yeah, there was a lot of yelling and screaming. I can't say who was fighting because I did not see Edwin come over, but there was a man and a woman that were arguing next door. And then I heard a loud thump and I heard nothing else."

Rohde testified that after she heard the loud thump, she heard the front door open and then close.  Rohde stated that she did not see who went out the door.  On the day in question, Rohde saw the State's witness, Carmen Long, with Brandy's two children in her car.  Rohde also said when she returned that day at about 6:00 p.m., she saw Johnson and Juanita Jones on the front porch.  She found this unusual because Brandy would have been very upset with Juanita at her home.

Carmen Long had lived with Johnson and Brandy at one time.  She was a co-worker of his and knew Juanita Jones.  She related that Brandy was aware of Johnson's affair with Jones.  She said that after the police ordered Johnson from the house, he moved in with Juanita Jones.  On September 24, 2005, after leaving work, Long and Johnson went to Juanita Jones' home that night.  Long testified that at approximately 11:30 a.m. on September 25, 2005, Johnson received a telephone call and he became very upset.  After Johnson ended the call, he indicated that he had to go to Brandy's home.

Long testified that because she needed to get some things from Brandy's house, she accompanied Johnson.  Long stated that Jones also accompanied them.  When they arrived, Long and Johnson exited the car, but Jones remained in the car.  Long stated that when

4

they entered the house, Brandy was sitting on the floor, in front of a mirror, applying her makeup. Long went upstairs, gathered some clothes from her bedroom, and returned to the car where she and Jones remained. She never saw Brandy leave the house.

Sometime later, Johnson exited the house with his daughters and brought them to the car. To Long, Johnson appeared upset, shocked, and was sweating heavily. Johnson gave the girls to her and went back to the house, accompanied by Jones. Long testified that Johnson and Jones remained in the house for approximately twenty minutes. When Johnson and Jones returned to the car, Johnson looked visibly shocked, scared, and was sweating heavily. Johnson instructed them to take the children someplace to eat. They left and Johnson returned to the house. Jones informed Long that she needed to go to the store and get garbage bags and bleach. Jones took both items to Brandy's house. Long testified that Jones left her presence about 9:00 p.m. with the two items.

Jones was an indicted co-defendant and agreed to testify for the State under a plea agreement. She confirmed Carmen Long's testimony and stated on the date in question, Johnson admitted choking Brandy until she became unconscious. She took the garbage bags and bleach to Johnson at 9:00 p.m., and Johnson went upstairs to a bedroom. Around midnight, they left Brandy's home.

Lead investigator, Detective Harry Matlock of the Cleveland Police Department, testified that he interviewed Johnson shortly after he was taken into custody. The detective told Johnson that Brandy had been murdered, and Johnson had no visible reaction. Detective Matlock testified that Johnson asked where Brandy's body was found, but not how she was killed.

Detective Matlock testified that Johnson related that a week prior to Brandy's death, they had fought. Johnson stated that he choked Brandy to the point where she couldn't breathe, and then he threw her on the couch. Johnson stated that he and Brandy fought a lot, and admitted that he had choked her on several occasions.

Detective Matlock further testified that Johnson indicated that on September 25, 2005, around 3:00 p.m., he arrived at Brandy's house to pick up the children. However, Brandy refused to give him the children, because she thought they were going to be around Jones. The couple began arguing. Johnson stated that while they were

5

arguing, he went into the bathroom; he heard Brandy go down the steps, and out the door.

Finally, Detective Matlock testified in pertinent part as follows:

> "Q. Now, at that point in time during this interview did you possess any information that would corroborate that particular point that – that anyone describes seeing Brandy exit the home Sunday between 3:00 and 4:00 p.m.
>
> A. Nobody ever sees her leave."

(Footnotes omitted.)

Petitioner appealed the appellate court ruling to the Ohio Supreme Court alleging the following five propositions of law:

> **Proposition of Law No. I:** The improper admission of "other acts" evidence not inextricably related to the murder and "probably" committed by defendant denies a defendant a fair trial in violation of the Fourteenth Amendment of the federal Constitution and a new trial must be ordered.
>
> **Proposition of Law No. II:** Prosecutorial misconduct denied Mr. Johnson a fair trial in violation of the Fourteenth Amendment of the federal Constitution.
>
> **Proposition of Law No. III:** It is a violation of the Fifth, Sixth and Fourteenth Amendments of the federal Constitution to elicit during the State's case in chief Mr. Johnson's failure to deny killing the victim as substantive evidence of guilt.
>
> **Proposition of Law No. IV:** In a case that is "purely circumstantial" the cumulative effect of the errors in the trial deprived Mr. Johnson of Due Process in violation of the Fourteenth Amendment of the federal Constitution.
>
> **Proposition of Law No. V:** The evidence is insufficient to sustain the convictions and the convictions violate the Fourteenth Amendment of the federal Constitution.

6

On October 1, 2008 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

While the direct appeal was pending, on August 6, 2007 the petitioner, acting pro se, filed with the trial court a petition to vacate or set aside sentence, which was not ruled upon.

On September 25, 2009, the petitioner filed the instant petition, in which he raises the following five claims for relief:

A. **GROUND ONE:** The improper admission of "other acts" evidence not inextricably related to the murder and "probably" committed by petitioner denied him a fair trial under the 14th Amendment of the federal Constitution. The State improperly used unsubstantiated claims of previous choking incidents; extra-marital affairs; failure to properly provide for his children; an alleged marriage to another woman and then his marriage to victim without legal termination of the previous marriage; and the purchase of an engagement ring for his alleged lover shortly before his wife's death. These "other acts" were the driving force of the State's case and denied him a fair trial in this circumstantial case in violation of the 14th Amendment of the federal Constitution.

B. **GROUND TWO:** Prosecutorial misconduct denied petitioner a fair trial under the 14th Amendment of the federal Constitution. The State improperly elicited "other acts" testimony; improperly used leading questions; elicited opinion testimony that victim would never leave the children with petitioner's paramour or let her in the house; improper argument in opening statement and closing arguments and asking the jury to convict so he does not kill his next wife; arguing that the trial was "suicide by jury" and petitioner could not accept responsibility and was asking jury to impose it on him.

C. **GROUND THREE:** It violated the Fifth, Sixth, and Fourteenth Amendments of the federal Constitution to elicit during the States's case in chief petitioner's failure to deny killing the victim as substantive evidence of guilt. Detective Matlock testified that he heard testimony of two witnesses who testified

7

that petitioner denied killing the victim but petitioner never made such a statement to the Detective.

**D.  GROUND FOUR:** The cumulative effects of the errors at trial, i.e., improper admission of other acts, prosecutorial misconduct and improper admission of petitioner's failure to deny the killing to the Detective, deprived petitioner of a fair trial in violation of Due Process under the Fourteenth Amendment of the federal Constitution.

**E.  GROUND FIVE:** The evidence is insufficient to sustain the convictions and the convictions violate the 14th Amendment of the federal Constitution. The Court of Appeals improperly used a standard of review that petitioner "probably" choked the victim on the day in question. In this "purely circumstantial" case "probably" does not "equate" to proof beyond a reasonable doubt. No evidence of how the victim's body was transported to field where it was found; or to link petitioner's car to the transportation of body; neither petitioner nor his car was seen near the body or field; no physical or trace evidence linking petitioner to victim's death; no physical evidence victim was killed in her home; State's theory inconsistent with medical evidence.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997).[2]

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[2]There are no issues of untimeliness or procedural default in this case.

8

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings; Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521. Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand. Id. See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

In petitioner's first claim for relief he challenges the admission of "other acts" evidence at

9

trial.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus.  Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000), cert. denied, 531 U.S. 1082 (2001).  Stated differently, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  Roe v. Baker, 316 F.3d 557, 567 (6th Cir. 2002).  Under the AEDPA the states have wide latitude in ruling on evidentiary matters.  Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001).  In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has held that there is no clearly established precedent of the United States Supreme Court holding that admission of prior bad acts evidence is violative of constitutional rights, so that admission of such evidence would not, in turn, warrant relief in federal habeas corpus.  Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003); Harmon v. Wilson, Case No. 5:06CV2059, 2007 U.S.Dist. LEXIS 91763, at *13 (N.D.Ohio 2007)(J.O'Malley).

The state appellate court rejected petitioner's assertion of error in admitting other acts evidence, holding in pertinent part:

10

In his first assigned error, Johnson argues that the other acts evidence presented by the State constituted reversible error. Several of the State's witnesses testified concerning Johnson's choking Brandy, domestic violence incidents, an extra-marital affair, and bigamy.

The coroner testified that Brandy's death was caused by cervical compression to the neck caused by manual strangulation. The State's theory of the case was that Johnson killed Brandy by strangling her.

This was a purely circumstantial evidence case. No direct evidence as to the perpetrator's identity existed. The State argued it offered these other acts in conformity with the Evid.R. 404(B) modus operandi identity exception.

In *State v. Lowe*, the Ohio Supreme court held that modus operandi evidence is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint. When the other acts behavioral fingerprint is compared with the behavioral fingerprint associated with the crime in question, this comparison may be used to identify the defendant as the perpetrator. One court has described this permissive comparison as necessary for the jury to address the issue: "whether this crime and the other acts were both committed in X manner, therefore, they were probably committed by the same person." In *Deyling*, the court was able to draw a line between permissible identity inference and impermissible character inference. Here, the issue in the case was the identity of the perpetrator. Whoever killed Brandy choked her to death. Johnson had a history of choking Brandy. The jury was correctly allowed to look at the behavioral fingerprint of the other acts and the charged crime, compare them, and draw a permissible identity inference that Johnson probably choked Brandy to death on the day in question.

As for the bigamy and infidelity acts, these may properly infer motive under the Evid.R. 404(B) exception. Consequently, we overrule Johnson's first assigned error and hold that the trial court did not abuse its discretion in admitting this evidence.

(Footnotes and citations omitted.)

The foregoing ruling of the state appellate court is premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

11

Nothing in that ruling was contrary to rulings of the United State Supreme Court on a similar question of law, nor did the state courts decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in that ruling which would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution. That being so, the appellate court's affirmance of the trial court's admission of the above-referenced evidence would not call for relief in habeas corpus. Petitioner's first claim for relief, therefore, is without merit.

In petitioner's second claim for relief he alleges prosecutorial misconduct by reason of the introduction of other acts evidence, extramarital affairs, and bigamy, as well as the prosecution's use of leading questions upon direct examination of its witnesses.

The controlling rule on the issue of alleged improper conduct by the prosecutor is that in order to warrant relief in habeas corpus a prosecutor's misconduct must have been such that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. De Christoforo, 416 U.S. 637, 643 (1974); Caldwell v. Russell, 181 F.3d 731 (6th Cir. 1999).

> On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair' . . . This court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt.

Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997)(citation omitted).

The Sixth Circuit has applied a two-part analysis to determine whether the conduct of a prosecutor rises to the level of a due process violation. United States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001); Boyle v. Million, 201 F.3d 711, 717 (6th Cir. 2001). It must first be determined

12

whether the prosecutor's remarks were "improper," an assessment which may turn on whether the prosecutor merely argued "reasonable inferences from the evidence," as is permitted, <u>Byrd v. Collins</u>, 209 F.3d 486, 535 (6th Cir. 2000), as opposed to misstating the evidence, which is not, <u>United States v. Carter</u>, <u>supra</u> at 784. It follows that a prosecutor is not permitted to argue to the jury any facts which are either prejudicial or not in evidence. <u>Byrd v. Collins</u>, <u>supra</u> at 535.

If the remarks of the prosecutor have been found to be improper, then this Court must apply the four-factor test set forth in <u>United States v. Carroll</u>, 26 F.3d 1380, 1385 (6th Cir. 1994) to determine "whether the impropriety was flagrant," which in turn amounts to deprivation of constitutional rights. <u>United States v. Carter</u>, <u>supra</u> at 783. The four factors to be applied are: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." <u>Ibid</u>.

In a habeas corpus context, application of the foregoing is altered by the requirement that this Court defer to the findings of the state courts on petitioner's claims of prosecutorial misconduct. <u>Bowling v. Parker</u>, 344 F.3d 487, 512 (6th Cir. 2003), citing <u>Macias v. Makowski</u>, 291 F.3d 447, 453-54 (6th Cir. 2002) ("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petitioner for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.") Habeas relief may only be granted on this claim if the state court's decision that the conduct of the prosecuting attorney was not unconstitutional constituted

13

an unreasonable application of clearly established federal law.

The state court rejected petitioner's claims of prosecutorial misconduct, holding in pertinent part:

> In the second assigned error, Johnson argues he was denied a fair trial due to prosecutorial misconduct. We disagree.
>
> A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. The effect of the prosecutor's misconduct must be considered in light of the whole trial. Furthermore, a prosecutor is afforded wide latitude during closing argument, and it is within the trial court's sound discretion to determine whether a comment has gone too far.
>
> In the instant case, Johnson claims the evidence of other acts, extramarital affairs, and bigamy introduced at trial, as well as the State's use of leading questions amounted to prosecutorial misconduct.
>
> Within this assigned error, Johnson claims the State's use of leading questions amounted to prosecutorial misconduct. We are not persuaded.
>
> The trial judge has discretion to allow leading questions on direct examination. Specifically, Evid.R. 611(C) provides that "leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." Furthermore, the court exercises reasonable control over the mode of interrogation so that its presentation will effectively ascertain the truth. Therefore, it is within the discretion of the trial court to permit the State to ask leading questions of its own witnesses.
>
> Our review of the record indicates that the trial court sustained Johnson's objections each time the State attempted to use leading questions on direct examination of its witnesses. The record also indicates that the trial court, being mindful that Johnson was representing himself, instructed the State not to lead the witnesses, even in instances where Johnson failed to object. The record clearly

14

indicates that the trial court took every measure to ensure that Johnson had a fair trial.

Consequently, Johnson was not prejudiced by the State's attempted use of leading questions.

Within this assigned error, Johnson claims the State improperly elicited opinion testimony that Brandy would not let Juanita Jones, Johnson's girlfriend, into their home, or leave the children around her. We are not persuaded.

A review of the record indicates that the allegedly improper opinion testimony was pivotal to rebut Johnson's claim that Brandy just walked down the steps and out the door, never to be seen again. The record indicates that most of the couple's fights revolved around Johnson's extramarital affairs, and most recently, the affair involving Juanita Jones. Therefore, the alleged improper opinion testimony was necessary to show that Brandy would not have permitted the children to be with Jones, nor permitted Jones to be in the marital home, especially given that Jones was romantically involved with her husband.

Within this assigned error, Johnson claims that the State engaged in prosecutorial misconduct during closing argument, by referring to him as a bigamist and a proven liar. We are not persuaded.

Generally, prosecutors are entitled to considerable latitude in closing argument. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." "Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced."

In the instant case, the reference to Johnson as a bigamist and a proven liar was based on the evidence presented that Johnson was still married to his first wife, Gloria Hall Johnson, when he obtained a marriage license to marry Brandy. The evidence presented at trial established that Johnson indicated on the application for the marriage license that he was unmarried. The evidence also established that Johnson was still married to Gloria Hall Johnson at the time of trial.

15

> We conclude, based on the evidence presented, that the prosecutor's
> reference to Johnson as a bigamist and a proven liar did not deprive
> Johnson of a fair trial. In light of the foregoing, we find that the
> prosecutor did not commit prosecutorial misconduct. Accordingly,
> we overrule the second assigned error.

(Footnotes and citations omitted.)

This Court is of the opinion that the foregoing state appellate court rulings that the conduct

of the prosecution was not improper and failed to rise to the level of a constitutional violation, did

not constitute an unreasonable application of clearly established federal law. That is particularly

true in this case where it has previously been determined that the admission of "other acts"

evidence does not warrant habeas relief, where objections to leading questions by the prosecution

were repeatedly sustained by the trial judge, who also instructed the prosecution to stop leading

even when there was no defense objection, where the opinion testimony was essential to rebut a

defense claim, and where the statements made during closing argument were supported by record

evidence, including an application for marriage license completed by the petitioner. It follows that

petitioner's second claim for relief must fail upon merits review.

In his third claim for relief the petitioner alleges that the prosecution violated his

constitutional right to remain silent by eliciting testimony in its case in chief that petitioner failed

to deny having murdered the victim.

An individual in police custody must be warned prior to interrogation of his or her right to

remain silent, that if statements are made they may be used against him or her, and that he or she has

the right to counsel, either appointed or retained, so as to protect the individual's privilege against

self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution. Miranda

v. Arizona, 384 U.S. 436, 478-79 (1966). Accord, Dickerson v. United States, 530 U.S. 428, 435

16

(2000); Stansbury v. California, 511 U.S. 318, 322 (1994); United States v. Myers, 123 F.3d 350, 359 (6th Cir. 1997).

A prosecutor is not permitted to impeach a defendant's version of the events surrounding the crime by referring to the defendant's silence as to those events after receiving Miranda warnings. Doyle v. Ohio, 426 U.S. 610 (1976). The rule of Doyle has been deemed to have originated in concepts of "fundamental fairness and Due Process concerns." Brecht v. Abrahamson, 507 U.S. 619, 629 (1993). In determining whether there has been a Doyle violation warranting relief, any such reference to a defendant's silence must be considered in terms of whether the reference was used against the defendant, and whether its use actually caused harm. Greer v. Miller, 483 U.S. 756, 763-64, n.5 (1987). Where there was an improper reference to the defendant's silence, as long as the prosecutor did not "undertake impeachment on" or "call attention to" the defendant's silence, that defendant's constitutional rights were not deemed to have been violated. Id. at 764-65, citing Doyle v. Ohio, supra at 619.

In the present case, the state appellate court found that there had been no Doyle violation:

> In the third assigned error, Johnson argues he was denied a fair trial because the State elicited testimony that he failed to deny to the detective that he killed Brandy. We disagree.
>
> In *Doyle v. Ohio*, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to the accused that the state will not use a defendant's silence against him at trial. "*Doyle* rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." "Such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt."
>
> In the instant case, Johnson specifically argues that the prosecutor improperly elicited the following testimony from Detective

17

Matlock:

"Q. Now, did you hear the testimony of Travis Milam and Carmen Long that when they spoke with the defendant during various points in their conversation with them after Brandy's death was discovered that he made a statement, I didn't do it to both Travis and Carmen?

A. Correct.

Q. Did he ever make such a statement to you?

A. Never."

Out of context, the State's questions appear to be a blatant *Doyle* violation. However, the rest of the exchange indicates that the State was inquiring into Detective Matlock's investigative procedures. The above-quoted section continued as follows:

"Q. During the course of your investigation did you receive documents in connection with the personal affairs of Brandy Wittenberg Johnson?

A. We conducted a search warrant at 2513 Woodbridge Avenue with the consent of Mr. Johnson, form which he signed and there were documents there on the dining room table that we had secured from the address.

Q. Detective, the first document that's before you, I believe is State's 152. What was the last item we left off before we get into these?

A. 152 is the marriage license."

The above excerpt, and the continued examination of Detective Matlock indicates that the State was inquiring about the investigative procedure. The record is devoid of any other reference to Johnson's failure to deny killing Brandy when he was interviewed by Detective Matlock. We conclude that the isolated question was not meant to be an insinuation of Johnson's guilt based on his silence. Accordingly, we overrule the third assigned error.

18

(Emphasis in original.) (Footnotes and citations omitted.)

The foregoing reference to the fact that the petitioner did not deny to Detective Matlock that he had committed the crime, could have been deemed a Doyle violation under different circumstances, but in this case the prosecutor did not otherwise call attention to the petitioner's silence. Rather, it was an isolated question during the course of detailing the investigative process, without any allegation of another instance in which there was a reference to petitioner's failure to deny committing the crime. In addition, two other witnesses testified that petitioner had denied to them that he had killed the victim, so that in addition to evidence of his silence there was also evidence of his denials, lessening any harmful effect of the exchange. That being so, the foregoing state appellate court ruling was not improper, failed to rise to the level of a constitutional violation, and did not constitute an unreasonable application of clearly established federal law. As a consequence, petitioner's third claim for relief must fail.

Petitioner's fourth claim for relief, in which he argues that his constitutional rights have been violated by reason of the cumulative effect of the trial errors upon which his first three claims for relief herein were premised, is also without merit in light of this Court's rejection of those claims on the merits.

In his fifth claim for relief petitioner argues that the evidence relied upon to convict him at trial was constitutionally insufficient.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Accord,

19

McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003). In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses. Herrera v. Collins, 506 U.S. 390, 401-402 (1993); Jackson v. Virginia, 443 U.S. at 319, n.13; Brown v. Davis, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2). Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof and held in pertinent part:

> In the fifth assigned error, Johnson argues his conviction is not supported by sufficient evidence. We disagree.
>
> The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman:*
>
> **"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."**
>
> *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, in which the Ohio Supreme Court held:

20

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

In the instant case, Johnson admitted to Detective Matlock that he was at the marital residence the day Brandy was last seen or heard from. Johnson also admitted that he and Brandy had an argument that day. Johnson then claimed that Brandy walked down the steps, out the front door, and he never saw her again. Carmen Long testified that she saw Brandy when she went with Johnson to the house. Long testified that after gathering some clothes, she went back to sit in the car with Juanita Jones, while Johnson was still inside the house with Brandy. Long testified that she never saw Brandy exit the house.

Juanita Jones testified that she drove with Johnson and Long to Brandy's house that day. Jones testified that she waited in the car while Johnson and Long went in the house. Jones testified that after Long returned to the car and she continued to wait for Johnson, she received a telephone call from Johnson indicating that he had choked Brandy and that she looked unconscious. Jones also testified that she never saw Brandy exit the house.

Jones also testified that Johnson asked her to buy bleach and garbage bags and bring them to him at Brandy's house. Jones delivered the requested items to Johnson at Brandy's home, and he proceeded upstairs with them. Jones further testified that the following morning, at approximately 4:00 a.m., Johnson left Jones' house after claiming he had to go to the store and to his parent's house. Jones testified that she did not see Johnson until she awoke later that morning.

Finally, the coroner determined that Brandy was choked to death and numerous witnesses testified that Johnson had choked Brandy on prior occasions. The foregoing evidence, viewed in a light most favorable to the State is sufficient to establish the elements of the

21

charged crimes.  Accordingly, we overrule the fifth assigned error.

(Footnotes and citations omitted.)

In finding the evidence sufficient to prove the elements of the crimes charged the state court relied heavily on state authorities, with reference to the proper standard to be applied as defined by federal authorities, arriving at a decision which was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  That is particularly so in light of the petitioner's admission that he had been with the victim before she died and that the two of them had fought, the testimony of Ms. Long that she had seen the victim when she went to her home with the petitioner, that the petitioner told her that he had choked the victim and that she seemed unconscious, that the petitioner had asked her to bring him bleach and garbage bags to the victim's home, that he had left at 4:00 in the morning to go somewhere, and the testimony of the coroner that the victim had died as a consequence of "cervical compression" and that her body was found on fire in a field in the early morning hours.  Consequently, petitioner's fifth claim for relief is without merit.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits.

It is, therefore, recommended that the petition be dismissed without further proceedings.

DAVID S. PERELMAN
United States Magistrate Judge

22

DATE:    July 14, 2010

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

23